PEARSON, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| DALE H. HENCEROTH, *et al.*, | ) | |
| | ) | CASE NO. 4:15CV2591 |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | JUDGE BENITA Y. PEARSON |
| | ) | |
| CHESAPEAKE EXPLORATION, L.L.C., | ) | **MEMORANDUM OF OPINION** |
| | ) | **AND ORDER** |
| Defendant. | ) | [Resolving ECF No. 9] |

Pending is Defendant Chesapeake Exploration L.L.C.'s ("Chesapeake Exploration") Motion to Dismiss (ECF No. 9) pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted. The Court has been advised, having reviewed the record, the parties' briefs and the applicable law. For the reasons set forth below, the Court denies the motion.

## I. Background

The case at bar is a putative class action against Chesapeake Exploration for the underpayment of oil and gas royalties. Plaintiffs Dale H. Henceroth; Melinda J. Henceroth; Ruth Burchfield, Trustee; James M. Burchfield, Trustee; Toni L. Burchfield, Trustee; Marilyn S. Wendt, Janet K. Cooper, Wilford L. Copeland, Virgil R. Barnes, and Karen G. Barnes (collectively "Plaintiffs") are lessors on Ohio oil and gas leases originally entered into with Anschutz Exploration Corporation ("Anschutz") and later assigned by Anschutz to Chesapeake

(4:15CV2591)

Exploration, the present lessee.  The leases provide for the payment of royalties on the oil and gas produced from the leased premises, including royalties on natural gas (methane), natural gas liquids ("NGLs") (ethane, propane, butane, isobutene and pentane), and oil.  They contain the following clause with respect to the calculation of royalty payments:

> (B)  ROYALTY:  To pay Lessor as Royalty, less all applicable taxes, assessments, and adjustments on production from the Leasehold, as follows:
> 1.  OIL:  To deliver to the credit of Lessor, free of cost, a Royalty of the equal one-eighth part of all oil and any constituents thereof produced and marketed from the Leasehold.
> 2.  GAS:  To pay Lessor an amount equal to one-eighth of the net proceeds realized by Lessee from the sale of all gas and the constituents thereof produced and marketed from the Leasehold.  Lessee may withhold Royalty payment until such time as the total withheld exceeds twenty-five dollars ($25.00).

*See* Plaintiffs' Oil and Gas Leases (ECF No. 1-1) at ¶ 5(B) of each Lease.

On January 20, 2016, Plaintiffs filed an Amended Class Action Complaint (ECF No. 6). The paragraph numbering begins to repeat itself starting at ¶ 57 on PageID #: 129.  *See* Minutes dated April 22, 2016.  Therefore, on April 25, 2016, Plaintiffs filed a Second Amended Class Action Complaint (ECF No. 18) to correct the misnumbering of paragraphs.  The Second Amended Class Action Complaint (ECF No. 18) asserts a single count – breach of contract.  But, this 45-page document contains 169 numbered paragraphs.  Plaintiffs allege that Defendant, through various related companies, breached the leases by underpaying the royalties due Plaintiffs and the other Class Members on all three products – natural gas, NGLs, and oil.

## II. Standard of Review

In deciding a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the Court must take all well-pleaded allegations in the complaint as true and construe those allegations in a light most

2

(4:15CV2591)

favorable to the plaintiff. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citations omitted). A cause of action fails to state a claim upon which relief may be granted when it lacks "plausibility in th[e] complaint." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 564 (2007). A pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009) (quoting Fed. R. Civ. P. 8(a)(2)). Plaintiffs are not required to include detailed factual allegations, but must provide more than "an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* at 678. A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." *Id.* at 557. It must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Id.* at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. *Twombly*, 550 U.S. at 556. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* at 557 (brackets omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting Rule 8(a)(2)).

3

(4:15CV2591)

### III. Analysis

Under Ohio law, "[t]o establish a breach of contract, a plaintiff must show that a contract existed, the plaintiff performed, the defendant breached, and the plaintiff suffered damages." *Pavlovich v. Nat'l City Bank*, 435 F.3d 560, 565 (6th Cir. 2006) (citing *Wauseon Plaza Ltd. P'ship v. Wauseon Hardware Co.*, 156 Ohio App.3d 575, 582 (2004)). Defendants argue that Plaintiffs have failed to allege facts in the Second Amended Complaint (ECF No. 18) that "support any claim that *their* leases have been breached and that *they* have suffered damages. Reply Memorandum (ECF No. 14) at PageID #: 267 (emphasis in original).

The Court concludes the Second Amended Complaint (ECF No. 18) contains sufficient factual allegations which, when accepted as true and construed in Plaintiffs' favor, set forth viable claims against Chesapeake Exploration upon which relief can be granted. Plaintiffs have adequately pleaded their claims that Defendant breached their leases by allegedly:

- deducting costs incurred after Chesapeake Exploration no longer held title to the oil and gas (*e.g.*, ECF No. 18 at PageID #: 312-13, ¶¶ 8, 10; PageID #: 326-27, ¶ 72; PageID # 347, ¶ 141);

- taking other improper cost deductions;

- failing to pay a royalty on the full amount of each product produced at the well (*e.g.*, ECF No. 18 at PageID #: 322, ¶¶ 48-49);[1]

---

[1] Plaintiffs declare that the Court can see the variance itself by comparing the amount of product reported on the royalty statement of Plaintiff Marilyn S. Wendt (reproduced at ¶ 44 of the Second Amended Complaint (ECF No. 18)) and the amount of product that Defendant reported to the Ohio Department of Natural Resources ("ODNR") on its website at http://www.ohiodnr.gov, "which this Court can judicially notice." Memorandum in Opposition (ECF No. 13) at PageID #: 259. Plaintiffs do not, however, specify what information is to be noticed, where it is located on the website, and why

(continued...)

(4:15CV2591)

- paying the gas royalties on less than the full revenue realized from the sale of the gas (*e.g.*, ECF No. 18 at PageID #: 324, ¶¶ 53-55); and,

- deducting marketing fees that were never incurred.

The principal claim is that Defendant improperly deducted costs incurred after it had sold the oil and gas at the well to Chesapeake Energy Marketing, L.L.C. ("CEMLLC"),[2] a gas marketing subsidiary of Chesapeake Energy Corporation.  ECF No. 18 at PageID #: 317, ¶¶ 29-30.  Plaintiffs cite as the source of some of their allegations a March 13, 2014 internet article written by ProPublica, a non-profit organization engaged in investigative reporting.  *See, e.g.*, ECF No. 18 at PageID #: 330-31, ¶¶ 85-86 (citing ProPublica, "Chesapeake Energy's $5 Billion Shuffle," available at http://propublica.org/article/chesapeake-energys-5-billion-shuffle) (last visited Sept. 14, 2016).  The article details the business dealings between Chesapeake's various subsidiaries, including the asset transfer sales, the gathering agreements that followed, the incentives received by Access Midstream Partners, L.P. and Chesapeake's subsidiaries, and the resulting impact on the royalty payments to Pennsylvania land owners.  Though the article focuses on one particular Pennsylvania resident, farmer Joe Drake, it identifies other

---

[1](...continued)
such information can and should be noticed for purposes of deciding the within motion.  The Court agrees with Defendant that the Court should not be burdened with the task of researching factual support for Plaintiffs' pleading for them.  ECF No. 14 at PageID #: 272 n. 7.  It is not the role of the Court to sift through information on the ODNR website and ponder whether any of the contents might be proper for judicial notice.  *See Liberi v. Taitz*, No. SACV 11-0485 AG (AJWx), 2014 WL 10988322, at *3 (C.D. Ca. Feb. 7, 2014).

[2] CEMLLC is referred to in the Second Amended Complaint as CEMI.  *See, e.g.*, ECF No. 18 at PageID #: 317, ¶ 29.

(4:15CV2591)

Pennsylvania landowners who, like Mr. Drake, saw their royalty payments decrease substantially after the purported self-dealing of Chesapeake's subsidiaries.  The article represents that its author "pieced together the story of how Chesapeake shifted borrowing costs to landowners from documents filed with the U.S. Securities and Exchange Commission, interviews with landowners, people who worked for [Chesapeake] and employees at other gas and oil concerns."

Ohio has not yet addressed whether costs incurred after the oil and gas has been sold may be deducted from oil and gas royalties.  Pennsylvania has ruled that they may not.  *Pollock v. Energy Corporation of America*, No. 2:10-cv-01553-JFC-RCM, 2012 WL 6929174, at *12 (W.D. Pa. Oct. 24, 2012) *report and recommendation adopted*, 2013 WL 275327, at *2 (W.D. Pa. Jan. 24, 2013)[3] (citing *Kilmer v. Elexco Land Services*, 990 A.2d 1147, 1149 n.2 (2010)).  Plaintiffs submit that the Ohio Supreme Court would agree with the Pennsylvania Supreme Court on this point of law.  ECF No. 13 at PageID #: 249.  According to Defendant, whether Ohio law will follow *Kilmer* and adopt the "netback method" of calculating royalties is an issue that is currently pending before the Ohio Supreme Court in *Lutz, et al. v. Chesapeake Appalachia, L.L.C.*, Ohio S.Ct. No. 2015-0545 (filed April 6, 2015).[4]  ECF No. 14 at PageID #: 269 n. 3.

---

[3]  The ruling is currently on appeal in the United States Court of Appeals for the Third Circuit.  *Pollock v. Energy Corporation of America*, Nos. 15-2648, 15-2649 (filed July 6, 2015).

[4]  *Lutz* similarly deals with underpayment of oil and gas royalties allegedly due to class action plaintiffs.  In dispute in *Lutz* are royalty provisions from oil and gas leases executed in the 1960s and 1970s that call for the calculation of royalties "at the well" or "at the wellhead."  *Lutz,* Respondents' Merit Brief, No. 2015-0545, 2015 WL 6558230, at *1 (Ohio S.Ct. Sept. 22, 2015).  Specifically, the disputed provision states that, "The royalties to be paid by Lessee are . . . the market value at the well of one-eighth of the gas

(continued...)

(4:15CV2591)

Ronald E. Hale is not a named plaintiff in the case at bar.  His lease names Defendant as the lessee.  Mr. Hale's royalty statement for the Buck Well is reproduced at ¶ 42 of the Second Amended Complaint (ECF No. 18).  According to Plaintiffs, Chesapeake Energy inadvertently provided Mr. Hale an internal company spreadsheet (reproduced at ¶ 40 of the Second Amended Complaint (ECF No. 18)) that exposes that the Hale royalty statement falsely reports zero cost deductions from the royalties when, in fact, there were large cost deductions.  Since the Wendt royalty statement (reproduced at ¶ 44 of the Second Amended Complaint (ECF No. 18)) likewise reports zero deductions and deductions are formatted the same way on both royalty statements, Plaintiffs infer

> it [ ] almost certainly is the case that there were likewise large cost deductions taken from the royalties paid under the leases naming Anschutz as the lessee. These cost deductions, like the cost deductions taken from the royalties paid under leases naming Defendant as the lessee, would necessarily have been incurred after the gas was sold because the gas is sold at the well.

ECF No. 13 at PageID #: 257.

Plaintiffs' other claims of improper cost deductions are narrower and moot if Plaintiffs prevail on their principal legal theory.  Under their principal theory, Plaintiffs allege that 100% of

---

[4](...continued)
so sold or used, provided that on gas sold at the wells the royalty shall be one-eighth of the amount realized from such sale." *Id.* at *15.  Because Ohio courts offered no interpretation of this language, U.S. District Judge Sara Lioi certified a question to the Ohio Supreme Court:  "Does Ohio follow the 'at the well' rule (which permits the deduction of post-production costs) or does it follow some version of the 'marketable product' rule (which limits the deduction of post-production costs under certain circumstances)?"  Order Certifying Question to Ohio Supreme Court (ECF No. 130 in *Lutz v. Chesapeake Appalachia, LLC*, No. 4:09CV2256 (N.D. Ohio April 1, 2015)) at PageID #: 3029.  Oral arguments before the Ohio Supreme Court took place on January 5, 2016 and, as of yet, no decision has been announced.  *Lutz*, Docket.

(4:15CV2591)

all costs deducted must be reimbursed because they were all incurred after Defendant had transferred title to CEMLLC. The secondary cost deduction claims seek only portions of the costs deducted.

The Court finds that the factual information alleged in the Second Amended Class Action Complaint (ECF No. 18) is sufficient to "to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. In that regard, a complaint does not have to contain facts that prove liability, rather it "must contain either direct or inferential allegations respecting all material elements to sustain a recovery under some viable legal theory." *Bishop v. Lucent Technologies, Inc.*, 520 F.3d 516, 519 (6th Cir. 2008) (quoting *Meziboy v. Allen*, 411 F.3d 712, 716 (6th Cir. 2005)).

### IV. Conclusion

Because Plaintiffs have pled sufficient facts pursuant to Fed. R. Civ. P. 8(a)(2) to state a claim that Chesapeake Exploration breached their leases, Defendant's Motion to Dismiss (ECF No. 9) is denied.

IT IS SO ORDERED.

 September 29, 2016     /s/ Benita Y. Pearson
Date                   Benita Y. Pearson
                       United States District Judge