PEARSON, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| DALE H. HENCEROTH, *et al.*, | ) | |
| | ) | CASE NO. 4:15CV2591 |
| Plaintiffs, | ) | |
| | ) | JUDGE BENITA Y. PEARSON |
| v. | ) | |
| | ) | |
| CHESAPEAKE EXPLORATION, L.L.C., | ) | **MEMORANDUM OF OPINION** |
| | ) | **AND ORDER** |
| Defendant. | ) | [Resolving ECF Nos. 86 and 105] |

Two matters are pending before the Court. The first is Plaintiffs' Motion for Class Certification. ECF No. 86. Defendant responded with an Amended Opposition (ECF No. 96), Plaintiffs replied (ECF No. 101), and Defendant rebutted (ECF No. 104). The second is Defendant's Motion to Exclude Expert Testimony of W.R. Harper, Jr. and Daniel T. Reineke. ECF No. 105. Plaintiffs are opposed. *See* ECF No. 110. A hearing was conducted. *See* Transcript (ECF No. 114).

For the following reasons, the Court grants Plaintiffs' Motion for Class Certification, and denies Defendant's Motion to Exclude Expert Testimony.

### I. Background

The named Plaintiffs, Dale H. Henceroth and Marilyn S. Wendt, along with eight others brought suit against Defendant Chesapeake Exploration, L.L.C. ("CELLC") for breach of contract in this putative class action. ECF No. 18. Eight of the ten original proposed class

representatives were dismissed after Plaintiffs filed their Second Amended Complaint ("SAC").

ECF No. 101 at PageID #: 7770.

CELLC is in the business of exploring and producing oil and gas, collectively known as "hydrocarbons." Plaintiffs are landowners in Ohio who originally entered into oil and gas leases with Anschutz Exploration Corporation ("Anschutz"). CELLC later entered into a business relationship with Plaintiffs after CELLC purchased Anschutz's interests in these leases. Through these leases, Plaintiffs agreed to lease the oil and gas rights to their land to CELLC. In exchange, Plaintiffs received an up-front bonus and are entitled to a percentage of the revenues received from the sale of the hydrocarbons in the form of royalty payments. The royalty payments are calculated based on the terms of the lease. ECF No. 96 at PageID #: 7723. Plaintiffs allege that CELLC calculated the royalties using the incorrect price as proscribed by the terms of the leases. ECF No. 18 at PageID #: 312.

There are 623 total leases at issue. The leases can be divided into three groups. All leases have a royalty provision in the body of the lease at Section 5(B) ("Section 5(B)"). The first group ("Group One") consists of 526 leases that are governed solely by Section 5(B). The second group ("Group Two") consists of 90 leases containing an addendum with a governing royalty provision. This royalty provision is commonly referred to in the oil and gas industry as a "Market Enhancement Clause." The third group ("Group Three") consists of seven leases containing an addendum with a different royalty provision. ECF No. 101 at PageID #: 7761. Named Plaintiff Dale H. Henceroth's two leases are a part of Group Two because they contain

the Market Enhancement Clause.  ECF Nos. 86-3, 86-4.  Named Plaintiff Marilyn S. Wendt's

lease is a part of Group One.  ECF No. 86-5.

Plaintiffs move for class certification on a single claim---that CELLC calculated the

royalties using the incorrect price.  ECF No. 86.  Defendant supported its opposition to

certification with the expert report of Kris Terry.  ECF No. 92-4.  Consequently, Plaintiffs

supported its reply with the expert reports of W.R. Harper, Jr. ("Harper") and Daniel T. Reineke

("Reineke").  ECF Nos. 102-1, 102-2.  Defendant moves to exclude the testimony and opinions

of Harper and Reineke.  ECF No. 105.

## II.  Standard of Review

### A.  Class Certification

The principal purpose of class actions is to achieve efficiency and economy of litigation

with respect to both the parties and the courts.  *See Gen. Tel. Co. v. Falcon*, 457 U.S. 147, 159

(1982).  Before certifying a class, the district court must conduct a "rigorous analysis" of the

prerequisites of Fed. R. Civ. P. 23.  *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551

(2011).  A district court has broad discretion in deciding whether to certify a class, although it

must exercise that discretion within the framework of Rule 23.  *Beattie v. CenturyTel, Inc.*, 511

F.3d 554, 559  60 (6th Cir. 2007); *In re American Medical Systems, Inc.*, 75 F.3d 1069, 1079 (6th

Cir. 1996).

"Rule 23 does not require a district court, in deciding whether to certify a class, to inquire

into the merits of the plaintiff's suit."  *Beattie*, 511 F.3d at 560.  But in evaluating whether class

certification is appropriate, "it may be necessary for the court to probe behind the pleadings,"

because the relevant issues are often "enmeshed" within the legal and factual considerations raised by the litigation. *Falcon*, 457 U.S. at 160. The party seeking class certification bears the burden of establishing that the requisites are met. *Alkire v. Irving*, 330 F.3d 802, 820 (6th Cir. 2003).

### B. Expert Testimony

The admission of expert testimony is governed by Fed. R. Evid. 702 and 703. Rule 702 states that an expert witness must be qualified "by knowledge, skill, experience, training, or education" to testify. Fed. R. Evid. 702. A district court "must determine whether the testimony has 'a reliable basis in the knowledge and experience of [the relevant] discipline'" before the testimony may be admitted. *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 149 (1999) (quoting *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 592 (1993) (alteration in original)).

Admissible testimony of a qualified witness must be both relevant and reliable. *See* Fed R. Evid. 702; *Bradley v. Ameristep, Inc.*, 800 F.3d 205, 208 (6th Cir. 2015); *United States v. Cunningham*, 679 F.3d 355, 379-80 (6th Cir. 2012). Relevant testimony "will help the trier of fact to understand the evidence or to determine a fact in issue." Fed R. Evid. 702 (a); *Daubert*, 509 U.S. at 591; *Cunningham*, 679 F.3d at 380. Reliability depends on "whether the reasoning or methodology underlying the testimony is scientifically valid and [ ] whether that reasoning or methodology properly can be applied to the facts in issue." *Daubert*, 509 U.S. at 592-93. The test of reliability is "flexible," and "the law grants a district court . . . broad latitude when it decides how to determine reliability." *Kumho Tire, Ltd.*, 526 U.S. at 141-42 (citing *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 143 (1997)).

### III. Discussion

**A. Motion for Class Certification**

In order to certify a class, a court must identify the purported class and determine that the named plaintiffs are members of the class; establish that the requirements of Fed. R. Civ. P. 23(a) have been met; and determine that the case may be certified pursuant to at least one of the subcategories of Fed. R. Civ. P. 23(b).

#### 1. Class Definition

In reviewing a motion for class certification, a court must first identify the purported "class" and determine that the named plaintiffs are members of the class. The class definition must specify "a particular group at a particular time frame and location who were harmed in a particular way" and define the class so that its membership can be objectively ascertained. *Edwards v. McCormick*, 196 F.R.D. 487, 491 (S.D. Ohio 2000). "[T]he class definition must be sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member of the proposed class." *Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 537 (6th Cir. 2012) (quoting 5 James W. Moore et al., *Moore's Federal Practice* § 23.21[1] (Matthew Bender 3d ed. 1997)) (internal quotation marks omitted).

Plaintiffs seek to certify a class, defined as:

> Every person except governmental entities who is, or has been, a royalty owner under an oil and gas lease in which (1) Anschutz Exploration Corporation is named as the lessee, (2) the lease was assigned to or otherwise acquired by Chesapeake Exploration, L.L.C., (3) the lease conveys rights to oil, natural gas and natural gas liquids in Ohio, and (4) one or more of these products was produced under the lease.

ECF No. 18 at PageID #: 349.

Defendant does not challenge Plaintiff's proposed class definition.  Both named Plaintiffs own royalties with oil and gas leases that fall within the proposed class definition.  ECF Nos. 86-3, 86-4, 86-5.

## 2. **Rule 23(a)** Prerequisites

After a class has been identified, plaintiffs must establish that the requirements of Fed. R. Civ. P. 23(a) are met.  Rule 23(a) lists four requirements for the certification of a class:

> One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).  There is also an implied requirement that the class members be ascertainable.  *See Romberio v. UnumProvident Corp.*, 385 F. App'x 423, 430-31 (6th Cir. 2009).

### i. Numerosity

Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable."  The Sixth Circuit has stated that, although "there is no strict numerical test, 'substantial' numbers usually satisfy the numerosity requirement." *Daffin v. Ford Motor Co.*, 458 F.3d 549, 552 (6th Cir. 2006).  According to Newberg's often-cited treatise, "a class of 40 or more members raises a presumption of impracticability of joinder based on numbers alone."  1 William B. Rubenstein, Alba Conte and Herbert B. Newberg, *Newberg on Class Actions* § 3:12 (5th ed. 2017).

Plaintiffs highlight that Defendant produced 623 leases with the same Section 5(B) provision. ECF No. 88 at PageID #: 7071. This is a large and "substantial" number sufficient to satisfy the numerosity requirement under Rule 23(a)(1). Defendant does not challenge Plaintiffs' numerosity argument.

Given the large number of potential class members, as well as the nature of the claims, Plaintiffs have satisfied the numerosity requirement.

### ii. Commonality

Rule 23(a)(2) requires that there be "questions of law or fact common to the class." The Sixth Circuit has characterized the commonality requirement as "qualitative rather than quantitative" and has observed that "[v]ariations in the circumstances of class members are acceptable, as long as they have at least one issue in common." *In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1080 (6th Cir. 1996). The resolution of the common issue must "advance the litigation." *Sprague v. Gen. Motors Corp.*, 133 F.3d 388, 397 (6th Cir. 1998). Commonality is satisfied when the claims "depend on a common contention . . . of such a nature that it is capable of classwide resolution    which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Young*, 693 F.3d at 542 (quoting *Dukes*, 131 S. Ct. at 2551).

Plaintiffs identify fifteen common questions of fact and five common questions of law. ECF No. 88 at PageID #: 7071-72. The fifteen common questions of fact include: (1) whether Defendant calculated the royalties using an "at the well" price; (2) whether Defendant had a marketing department or any employees engaged in marketing; (3) whether Defendant had an

office from which to market; (4) whether Defendant had a bank account from which it could pay marketing costs, such as gathering, compression, processing, fractionation and interstate transportation; (5) whether Defendant had any employees; (6) whether Defendant had a bank account from which it could pay employees; (7) whether Defendant transferred title to any well product to its marketing affiliate, Chesapeake Energy Marketing, L.L.C. ("CEMLLC"); (8) whether Defendant contracted to sell any well product to CEMLLC under an enforceable contract; (9) whether CEMLLC paid money to Defendant for any well product; (10) whether CELLC paid money to Defendant for any well product; (10) whether Defendant had a bank account into which it could receive payments of money; (11) whether CEMLLC marketed well products to third-party buyers; (12) whether Defendant or CEMLLC paid the costs of marketing the well products to the third-party buyers; (13) whether any costs incurred were incurred after Defendant transferred title; (14) whether Defendant was "credited" for the sale of well products on Chesapeake Energy's general ledger; and, (15) whether such credits equaled the amounts paid by the third-party buyers. ECF No. 88 at PageID #: 7071-72.

Plaintiffs' five identified common questions of law include: (1) whether an oil and gas lessee can "market" oil and gas if it has no marketing department, no employees engaged in marketing, no bank account, no office and no enforceable written contract to sell any well products; (2) whether an oil and gas lessee can be "paid proceeds" if it has no bank account; (3) whether a "credit" on a general ledger constitutes the "payment of proceeds;" (4) whether an oil and gas lessee can deduct costs that it does not incur; and, (5) whether an oil and gas lessee can deduct costs that are incurred after it has transferred title. ECF No. 88 at PageID #: 7072.

Defendant contests the commonality of the potential class with three arguments. First, Defendant argues that Plaintiffs failed to provide an evidentiary basis for finding that any of their questions would generate common answers. ECF No. 88 at PageID #: 7072. Plaintiffs adequately address this argument in their reply brief by pointing out the evidence they provide to show how Defendant underpays the royalties, as alleged in the SAC, and in the exhibits accompanying the Motion for Class Certification. *See* ECF Nos. 18, 86.

Second, Defendant argues that commonality cannot be found because the proposed class leases contained varying royalty provisions with different language. ECF No. 88 at PageID #: 7072. This is Defendant's main argument. The proposed class leases can be categorized into three groups. All leases in question contain the Section 5(B) royalty provision. However, only Group One is governed solely by Section 5(B) because these 526 leases do not contain an addendum addressing royalty payments. Group Two consists of the 90 leases that have the Market Enhancement Clause addendum, which contains the governing royalty provision. Group Three contains seven leases that have a different non-standard addendum which also contains a royalty provision. ECF No. 101 at PageID #: 7761.

The central question at issue here is whether the different lease language precludes commonality. Plaintiffs argue that although the three governing royalty provisions contain different language, "[c]orrectly read, all of the leases require that the royalties be paid on the third-party price without cost deductions." ECF No. 101 at PageID #: 7759-60. In other words, although the lease language is different, all three groups of leases impose the same royalty payment obligations.

Group One requires that the royalties be paid on the price paid by the third-party buyers without cost deductions because Section 5(B) is the governing royalty provision. Although Group Two and Group Three have different royalty provisions, the same royalty calculation should be applied. Group Two's Market Enhancement Clause is a commonly used addendum within the oil and gas industry to "deal with the issue of whether the netback methodology may be used to calculate royalty where the sales point is downstream of the well." 3-6 Williams & Meyers, Oil and Gas Law § 643 (2017). Specifically, Group Two's Market Enhancement Clause provides that no costs can be deducted unless they are actually incurred by the lessee. Similarly, Group Three's addendum language states that royalties must be on "the price actually received" and "no deduction may be made therefrom." ECF No. 101 at PageID #: 7762. Therefore, all three groups apply the same royalty calculus if the lessee, Defendant, does not incur actual costs because the price received is the price paid by the third-parties to CEMLLC, the marketing affiliate. This goes to Plaintiffs' common questions, such as whether Defendant actually marketed the hydrocarbons, whether Defendant actually incurred costs, and whether these costs can be deducted.

Defendant does not explicitly dispute that it calculated royalty payments for Plaintiffs and all putative class members the same way. *See* ECF Nos. 96, 104. Defendant argues that the unrealized intra-company transfer of funds between CELLC and CEMLLC are a valid legal debt and consideration because inter-company transactions are standard transactions, and conducted in the ordinary course of business. *In re Hillsborough Holdings Corp.*, 166 B.R. 461, 471 (Bankr. M.D. Fla. 1994). However, *Hillsborough Holdings* is inapposite because it only held that

(4:15CV2591)

transfer of funds down a company line to its subsidiary does not warrant piercing of the corporate veil. *Id*.

Here, Plaintiffs and the putative class members challenge Defendant's royalty payment calculations under the same legal and factual theories   that Defendant calculated the royalties using the wrong price. ECF No. 88 at PageID #: 7061. This issue is common to all class members. Although the calculation of damages will require individual calculations due to the various lease language, it does not preclude a finding of commonality.

Third, Defendant argues that commonality cannot be found because the wells in question use different gathering systems. ECF No. 96 at PageID #: 7733. However, only two types of gathering systems are used for all the wells in question, and no costs can be deducted from the royalties regardless of which gathering system is used because the lessee pays no costs. ECF No. 101 at PageID #: 7764. Similar to the previous argument, here, common questions of fact and law remain even if two different gathering systems are used.

Given the common questions of facts and law presented, Plaintiffs have satisfied the commonality requirement.

### iii. Typicality

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Typicality "tends to merge" with commonality because both "serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected

in their absence." *Young*, 693 F.3d at 542 (quoting *Dukes*, 131 S. Ct. at 2551 n.5). Typicality will be found when the representative has aligned interests with the class members, and pursuing the personal claims will also advance the class members' interests. *In re Am. Med. Sys.*, 75 F.3d at 1082.

Plaintiffs assert that their claims are typical of class claims because Defendant failed to calculate the royalties using the correct price for all class members. ECF No. 88 at PageID #: 7072. Defendant argues that Plaintiff Henceroth's claims are not typical because they contain the Market Enhancement Clause addendum. ECF No. 96 at PageID #: 7733-34. The Market Enhancement Clause only permits deductions if the lessee incurs them and the common question is whether Defendant incurs any. ECF No. 101 at PageID #: 7766. Again, Defendant does not explicitly dispute that it calculates royalty payments to Plaintiffs and each class member in the same way. Rather, Defendant asserts that Plaintiff Henceroth's claims are not typical of class members' claims because his leases contain the Market Enhancement Clause. As discussed above, however, certification should not be denied because common issues apply to all three groups of leases.

Given that Plaintiffs and all class members entered into lease agreements with Defendant, assert the same legal theory to recover royalty payments, and suffered the same type of harm, typicality is satisfied.

### iv. Adequacy

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." The class representative must be part of the class, and "possess the

same interest and suffer the same injury as the class." *Young*, 693 F.3d at 543 (citing *Amchem Prod. Inc. v. Windsor*, 521 U.S. 591, 625‒26 (1997)). The Sixth Circuit considers two criteria for determining adequacy of representation: (1) the representatives have common interests with the unnamed members of the class, and (2) the representatives will vigorously prosecute the interests of the class through qualified counsel. *Beattie*, 511 F.3d at 563. The first requirement serves to uncover conflicts of interest between representative and the class. *Young*, 693 F.3d at 543. The second inquires into the competence and qualifications of counsel. *In re Am. Med. Sys.*, 75 F.3d at 1083.

Plaintiffs claim that they have no conflict of interest with other class members and that, based on their extensive experience handling other similar class actions, its counsel is competent and qualified. ECF No. 88 at PageID #: 7073-75. Defendant disputes Plaintiffs' adequacy in representing the class. First, Defendant argues that Plaintiffs' abandonment of nearly all of the breach of contract theories asserted in the SAC renders them inadequate class representatives. ECF No. 96 at PageID #: 7735. Second, Defendant argues that class counsel is inadequate because they have repeatedly demonstrated that they are not generally able to conduct the litigation, most notably by failing to adequately investigate the class representatives and by failing to keep those representatives informed of the litigation. ECF No. 96 at PageID #: 7738.

To support its first adequacy argument, Defendant reasons that Plaintiffs asserted numerous claims for breach of contract in their SAC. Although those claims all remain pending in this action, Plaintiffs are only requesting certification of a single claim on behalf of the putative class. In turn, this is a "divergence of interests between Plaintiffs and the class" which

"creates a conflict that renders them inadequate class representatives." ECF No. 96 at PageID #: 7736. Defendant claims that Plaintiffs' "willingness to throw away the claims of absent class members in an effort to manufacture a certifiable class renders them inadequate" because it risks waiving the class members' rights to seek recovery on the claims that Plaintiffs originally asserted on their behalf. ECF No. 96 at PageID #: 7737.

The fact that Plaintiffs are only seeking certification of a single claim does not strictly preclude Plaintiffs from acting as class representatives. The Court may certify less than all of the claims in a complaint. *Gooch v. Life Investors Ins. Co. of Am.*, 672 F.3d 402, 429 (6th Cir. 2012). The Fifth Circuit addressed this issue and held that in "deciding whether a class representative's decision to forego certain claims defeats adequacy requires an inquiry into, at least: (1) the risk that unnamed class members will forfeit their right to pursue the waived claim in future litigation, (2) the value of the waived claim, and (3) the strategic value of the waiver, which can include the value of proceeding as a class (if the waiver is key to certification)." *Slade v. Progressive Sec. Ins. Co.*, 856 F.3d 408, 413 (2017).

Under this analysis, Plaintiffs' decision to seek certification of the price claim alone is appropriate. The other claims in the SAC all pertain to specific cost deductions, and all potential damages under these claims are captured under the more global claim on the incorrect sale price. If Plaintiffs prevail on the claim at issue, they will recoup all of the deductions taken from the third-party price. Moreover, it is well established that putative class members with concerns can always opt-out of the class. *See* Fed. R. Civ. P. 23(b)(3). Therefore, there are no conflicts sufficient to deny adequacy of representation.

To support its second adequacy argument, Defendant argues that Plaintiffs' counsel is inadequate because they failed to thoroughly examine the originally named plaintiffs and ascertain whether they would be able to serve as class representatives.  ECF No. 96 at PageID #: 7738.  Defendant points out the fact that only two of the original named Plaintiffs remain as class representatives.  Defendant also argues that Plaintiffs' counsel should have done a better job of keeping the named Plaintiffs informed of the progress of litigation.

Ideally, Plaintiffs' counsel would have recognized the potential issues of the unfit original plaintiffs at the onset of litigation.  Much ado is made of this gaff, given that the parties found to be unsuitable Plaintiffs were voluntarily dismissed after the problems were discovered.  Counsel for Plaintiffs recognize that their actions were not perfect, and that mistakes were made in the beginning of litigation.  ECF No. 101 at PageID #: 7770.  Considering counsel's experience in oil and gas cases, they are sufficiently competent and qualified to satisfy adequacy.

Given that there are no conflicts, and that counsel is adequately competent, the representative parties will fairly and adequately protect the interests of the class.

### v. Ascertainability

Ascertainability is not expressly required under Rule 23(a), but it "goes to whether the class has been defined such that it encompasses an identifiable group." *Stewart v. Cheek & Zeehandelar, LLP*, 252 F.R.D. 387, 391 (S.D.Ohio 2008).  The proposed class "must be capable of concise and exact definition." *Metcalf v. Edelman*, 64 F.R.D. 407, 409 (N.D.Ill.1974).  The "touchstone of ascertainability is whether the class is objectively defined, so that it does not implicate the merits of the case or call for individualized assessments to determine class

(4:15CV2591)

membership." *Stewart*, 252 F.R.D. at 391 (citing *Napier v. Laurel County*, No. 06 368, 2008 WL 544468, *6 (E.D.Ky. Feb.26, 2008)).

Defendant argues that the class is not ascertainable because the lessors on a lease are not always the correct recipient of royalty payments and that the lessors change over time. ECF No. 96 at PageID #: 7740. However, ascertainability only requires the proposed class to be sufficiently definite so that it is administratively feasible for the court to determine the membership without making individualized fact-finding. *Romberio*, 385 F. App'x at 431. Here, the proposed class definition sufficiently defines the potential class members for purposes of ascertainability. *See* ECF No. 18 at PageID #: 349. It not likely that Defendant cannot produce the necessary records to show whom actually received royalty payments, or that the Court will be required conduct individualized fact-finding. There is no evidence to suggest that Defendant has failed to adhere to industry standard accounting practices, or was unable to maintain up-to-date payment records. The lessee's record of who received the royalty payments are a means of determining who should receive compensation for the alleged underpayments in any given month.

Therefore, Plaintiffs have satisfied the implied ascertainability requirement.

### vi. Summary

For the foregoing reasons, the Court finds that Plaintiffs have shown numerosity, typicality, commonality, adequacy, and ascertainability; and, therefore, have satisfied Rule 23(a).

(4:15CV2591)

### 3. **Rule 23(b)** Prerequisites

In addition to meeting the requirements of Rule 23(a), Plaintiffs must also demonstrate

that the case may be certified pursuant to at least one of the subcategories of Rule 23(b). Rule

23(b) provides, in pertinent part, that:

A class action may be maintained if Rule 23(a) is satisfied and if:

> (1) prosecuting separate actions by or against individual class members would create a risk of:

>> (A) inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or,

>> (B) adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests;

> (2) the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole, or

> (3) the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The matters pertinent to these findings include:

>> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
>> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
>> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
>> (D) the likely difficulties in managing a class action.

(4:15CV2591)

Fed. R. Civ. P. 23(b).  Plaintiffs contend that the case may be certified pursuant to Rule 23(b)(3).

ECF No. 88 at PageID #: 7075.

### i. **Rule 23(b)(3)**

Plaintiffs seeks to maintain this class action under Rule 23(b)(3), which allows a class

action to proceed if "questions of law or fact common to class members predominate over any

questions affecting only individual members" and "a class action is superior to other available

methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).  This is

commonly referred to as the predominance and superiority requirements.

### ii. **Predominance**

"To meet the predominance requirement, a plaintiff must establish that issues subject to

generalized proof and applicable to the class as a whole predominate over those issues that are

subject to only individualized proof."  *Young*, 693 F.3d at 544.  "The fact that a defense may

affect different class members differently does not compel a finding that the individual issues

predominate over common ones."  *Id.*

Similar to its commonality argument, Defendant again argues that Plaintiffs failed to

show predominance because of the different royalty language among the leases.  ECF No. 96 at

PageID #: 7733.  As discussed above, the different language used does not actually affect

certification because all three groups of leases require that the royalties be paid on the third-party

price without cost deductions.  Therefore, common questions predominate and individualized

inquiry is not required.

18

Defendant also argues that, even if the leases were uniform, Plaintiffs' breach of contract theory still raises individualized inquiries. ECF No. 96 at PageID #: 7733. In short, Defendant asserts that Plaintiffs' theory is not subject to class-wide proof and require the Court to individually examine the hydrocarbons produced from each of the wells for its marketability.

Once again, Plaintiffs' theory does not actually require a determination of whether the gas was in marketable condition at the well. ECF No. 101 at PageID #: 7765. Rather, Plaintiffs claim that the leases require that the royalty be paid on "marketed" oil and gas, but the only products to be "marketed" were the products marketed to the third-party buyers. ECF No. 101 at PageID #: 7762. This common question predominates over all individual issues.

Therefore, predominance is satisfied.

### iii. Superiority

Rule 23(b)(3) requires that a class action be "superior to other available methods for fairly and efficiently adjudicating the controversy." The Court should balance "the desirability of class treatment with the likely difficulties in managing a class action." *Sandusky Wellness Ctr., LLC v. ASD Specialty Healthcare, Inc.*, 863 F.3d 460, 471 (6th Cir. 2017).

Defendant argues that a class action is not the superior method of adjudication because the "predominance of individual issues render this action wholly unmanageable as a class action." ECF No. 104 at PageID #: 9215. However, as discussed above, Plaintiffs seek to certify the class for a single issue applicable to all class members. This allows for the litigation of pertinent issues in a fair and efficient manner. There are no individual issues sufficient to render the entire action as unmanageable, and there is always the option for individual class members to

opt-out. Additionally, the potential high cost of individual litigation further supports the use of class action.

Therefore, superiority is satisfied.

### iv. Summary

Because the Class meets the requirements of Rule 23, the Court certifies the following Class:

> Every person except governmental entities who is, or has been, a royalty owner under an oil and gas lease in which (1) Anschutz Exploration Corporation is named as the lessee, (2) the lease was assigned to or otherwise acquired by Chesapeake Exploration, L.L.C., (3) the lease conveys rights to oil, natural gas and natural gas liquids in Ohio, and (4) one or more of these products was produced under the lease.

### 4. Class Counsel

Rule 23(g) requires that "a court that certifies a class must appoint class counsel." Fed. R. Civ. P. 23(g). In appointing counsel, the Court must consider counsel's (1) work in identifying or investigating potential claims, (2) experience in handling class actions or other complex litigations, (3) knowledge of the applicable law, and (4) resources. Fed. R. Civ. P. 23(g)(1)(A).

Plaintiffs' counsel, Robert C. Sanders, Mark A. Hutson, James A. Lowe, and Robert L. Guehl, have taken depositions, conducted discovery, prepared and filed the motions and briefs for Plaintiffs in the case, and appeared Court hearings. Counsel also have experience in similar complex oil and gas litigation. Based on the record before it, the Court is satisfied that Plaintiffs' counsel will adequately represent the interests of the class as counsel.

The requirements of Rule 23(g) have been satisfied.

(4:15CV2591)

### B. Motion to Exclude Expert Testimony

Under Rule 702, admissible expert testimony must be both relevant and reliable. *See* Fed R. Evid. 702. The Sixth Circuit has long held that Rule 702 "is to be broadly interpreted." *Mannino v. Int'l Mfg. Co.*, 650 F.2d 846, 849 (6th Cir. 1981). Acting as gatekeeper, a district court must determine whether the expert's proposed testimony is admissible. *Daubert*, 509 U.S. at 592 n.10. "But 'rejection of expert testimony is the exception rather than the rule.'" *In re Scrap Metal Antitrust Litig.*, 527 F.3d 517, 530 (6th Cir. 2008) (quoting Fed. R. Evid. 702 advisory committee's notes, 2000 amend.).

Defendant argues that testimony from both Plaintiffs' experts should be excluded. ECF No. 105-1 at PageID #: 9833. First, Defendant argues that Harper's expert opinion is neither reliable nor relevant because he relies on oil and gas decisions from jurisdictions outside of Ohio. ECF No. 105-1 at PageID #: 9835. This argument fails to appreciate that there is a dearth of controlling Ohio oil and gas law. In 2016, the Ohio Supreme Court explicitly declined to answer a certified question of law pertinent to the instant case. *Lutz v. Chesapeake Appalachia, L.L.C.*, 71 N.E.3d 1010, 1011 (Ohio 2016). Specifically, the *Lutz* court held that under Ohio law, "an oil and gas lease is a contract that is subject to the traditional rules of contract construction."[1] *Id.* Harper based his expert opinions on law from outside of Ohio due to necessity, not preference. Therefore, Harper's expert opinions will not be excluded.

---

[1] On January 3, 2018, the Ohio Supreme Court issued another decision which reiterated the *Lutz* holding. *Alford v. Collins-McGregor Operating Co.*, No. 2016 1281, 2018 WL 321611, *2 (Ohio 2018) (quoting *Lutz*, 71 N.E.3d at 1010).

Second, Defendant argues that Reineke's expert opinion should be excluded as unreliable because he failed to review all 623 leases in question. ECF No. 105-1 at PageID #: 9838. Reineke admits that he failed to individually examine every single lease at the onset of litigation, but instead relied upon a summary provided by Plaintiffs' counsel. ECF No. 110-1 at PageID #: 10313. However, experts are not strictly required to examine every single lease in large cases to meet the requirements of admissibility under Rule 702. Additionally, Reineke has since stated that he was able to individually review all 623 leases and maintain the same opinion in support of certification. ECF No. 110-1 at PageID #: 10313. Therefore, Reineke's expert opinions will not be excluded due to unreliability.

Given that Harper had limited Ohio law on which to rely and that Reineke eventually reviewed all 623 leases, Plaintiffs' expert witness testimony will not be excluded and has been considered by the Court in ruling on Plaintiffs' Motion for Class Certification (ECF No. 86).

## IV.  Conclusion

For the foregoing reasons, the Court grants Plaintiffs' Motion for Class Certification (ECF No. 86), and denies Defendant's Motion to Exclude Expert Testimony of W.R. Harper, Jr. and Daniel T. Reineke (ECF No. 105).

Additionally, Robert C. Sanders, Mark A. Hutson, James A. Lowe, and Robert L. Guehl are appointed lead class counsel. The Court finds that these attorneys will fairly and adequately represent the interests of the class, in consideration of the work counsel has done in investigating potential claims in this action, counsel's experience in handling class actions, other complex

(4:15CV2591)

litigation, and claims of the type asserted in this action, counsel's knowledge of the applicable

law, and the resources counsel will commit to representing the class.  *See*  Fed. R. Civ. P. 23(g).


      IT IS SO ORDERED.


 March 23, 2018                          */s/ Benita Y. Pearson*           
Date                                      Benita Y. Pearson
                                         United States District Judge